1  BETSY C. MANIFOLD (SBN 182450)
   RACHELE R. BYRD (SBN 190634)
2  MARISA C. LIVESAY (SBN 223247)
   BRITTANY N. DEJONG (SBN 258766)
3  **WOLF HALDENSTEIN ADLER**
   **  FREEMAN & HERZ LLP**
4  750 B Street, Suite 1820
   San Diego, CA 92101
5  Telephone: (619) 239-4599
   Facsimile: (619) 234-4599
6  manifold@whafh.com
   byrd@whafh.com
7  livesay@whafh.com
   dejong@whafh.com
8
9  *Attorneys for Plaintiff*
10 [Additional Counsel on Signature Page]

11                    **UNITED STATES DISTRICT COURT**
12                    **NORTHERN DISTRICT OF CALIFORNIA**

13 ELAINE WANG,                          ) Case No.
                                         )
14            Plaintiff,                  )
                                         )
15     v.                                )
                                         ) **COMPLAINT FOR VIOLATIONS OF**
16                                       ) **SECTIONS 14(a) AND 20(a) OF THE**
                                         ) **SECURITIES EXCHANGE ACT OF**
17 SLACK TECHNOLOGIES, INC., ANDREW      ) **1934**
   BRACCIA, STEWART BUTTERFIELD,          )
18 EDITH COOPER, SARAH FRIAR, SHEILA     ) <u>DEMAND FOR JURY TRIAL</u>
   JORDAN, MIKE MCNAMARA, JOHN            )
19 O'FARRELL, and GRAHAM SMITH,           )
                                         )
20                                       )
            Defendants.                  )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
24
25
26
27
28

Plaintiff Elaine Wang ("Plaintiff"), by her attorneys, makes the following allegations against Slack Technologies, Inc. ("Slack" or the "Company") and the members of the board of directors of Slack (the "Board" or "Individual Defendants," along with Slack, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed acquisition (the "Proposed Transaction") of Slack by affiliates of salesforce.com, inc. ("Salesforce"). The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## **INTRODUCTION**

1. This is an action brought by Plaintiff to enjoin a transaction whereby Skyline Strategies I Inc., a Delaware corporation and direct wholly owned subsidiary of Salesforce ("Merger Sub I") will merge with and into Slack, with Slack continuing as the surviving corporation as a direct wholly owned subsidiary of Salesforce, immediately followed by a second merger of the surviving corporation into either Skyline Strategies II LLC ("Merger Sub II") or Salesforce, with either Merger Sub II or Salesforce continuing as the surviving company ("Proposed Transaction"). Pursuant to the Merger Agreement, Slack shareholders will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each share of Slack common stock owned (the "Merger Consideration"). The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction at the special meeting of the Slack shareholders.

2. To convince Slack stockholders to vote in favor of the Proposed Transaction, on December 23, 2020, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"). The Registration Statement violates Sections 14(a) and 20(a) of the Exchange Act by noncompliance with Regulation G and SEC Rule 14a-9 (17 C.F.R. § 244.100 and 17 C.F.R. § 240.14a-9, respectively).

3.     Defendants have failed to disclose certain material information necessary for Slack stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Registration Statement materially incomplete and misleading.

4.     In particular, the Registration Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company prepared and relied upon by the Board in recommending to the Company's stockholders that they vote in favor of the Proposed Transaction. The same forecasts were used by Slack's financial advisors, Qatalyst Partners LP ("Qatalyst") and Goldman Sachs & Co. LLC ("Goldman Sachs"), in conducting their valuation analyses in support of their fairness opinions. The Registration Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by the financial advisors.

5.     The material information that has been omitted from the Registration Statement must be disclosed prior to the forthcoming stockholder vote in order to allow the stockholders to make an informed decision regarding the Proposed Transaction.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Slack stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over each defendant named herein because

each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Slack is headquartered in this District.

## PARTIES

10.     Plaintiff has owned the common stock of Slack since prior to the announcement of the Proposed Transaction herein complained of and continues to own this stock.

11.     Slack is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices at 500 Howard Street, San Francisco, California 94105.  Slack is, and at all relevant times hereto was, listed and traded on the New York Stock Exchange under the symbol "WORK."

12.     Defendant Andrew Braccia has been a member of the Board since March 2010.

13.     Defendant Stewart Butterfield has been a member of the Board since February 2009 and is also a Co-Founder, Chairperson, and Chief Executive Officer of the Company.

14.     Defendant Edith Cooper has been a member of the Board since January 2018.

15.     Defendant Sarah Friar has been a member of the Board since March 2017.

16.     Defendant Sheila Jordan has been a member of the Board since September 2019.

17.     Defendant Mike McNamara has been a member of the Board since December 2019.

18.     Defendant John O'Farrell has been a member of the Board since April 2011.

19.     Defendant Graham Smith has been a member of the Board since December 2018.

20.     The Defendants referred to in paragraphs 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

21.     The Defendants referred to in paragraphs 11-19 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

***The Proposed Transaction***

22.     On December 1, 2020, Slack and Salesforce jointly announced that it had entered

---

into the Agreement and Plan of Merger (the "Merger Agreement"):

> SAN FRANCISCO--(BUSINESS WIRE)-- Salesforce (NYSE: CRM), the global leader in CRM, and Slack Technologies, Inc. (NYSE: WORK), the most innovative enterprise communications platform, have entered into a definitive agreement under which Salesforce will acquire Slack. Under the terms of the agreement, Slack shareholders will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each Slack share, representing an enterprise value of approximately $27.7 billion based on the closing price of Salesforce's common stock on November 30, 2020.

> Combining Slack with Salesforce Customer 360 will be transformative for customers and the industry. The combination will create the operating system for the new way to work, uniquely enabling companies to grow and succeed in the all-digital world.

> "Stewart and his team have built one of the most beloved platforms in enterprise software history, with an incredible ecosystem around it," said Marc Benioff, Chair and CEO, Salesforce. "This is a match made in heaven. Together, Salesforce and Slack will shape the future of enterprise software and transform the way everyone works in the all-digital, work-from-anywhere world. I'm thrilled to welcome Slack to the Salesforce Ohana once the transaction closes."

> "Salesforce started the cloud revolution, and two decades later, we are still tapping into all the possibilities it offers to transform the way we work. The opportunity we see together is massive," said Stewart Butterfield, Slack CEO and Co-Founder. "As software plays a more and more critical role in the performance of every organization, we share a vision of reduced complexity, increased power and flexibility, and ultimately a greater degree of alignment and organizational agility. Personally, I believe this is the most strategic combination in the history of software, and I can't wait to get going."

> **Acquisition to Create the Operating System for the New Way to Work**
> The events of this year have greatly accelerated the move by companies and governments to an all-digital world, where work happens wherever people are— whether they're in the office, at home or somewhere in between. They need to deliver connected experiences for their customers across every touchpoint and enable their employees to work seamlessly wherever they are.

> Together, Salesforce and Slack will give companies a single source of truth for their business and a unified platform for connecting employees, customers and partners with each other and the apps they use every day, all within their existing workflows.

**Slack to Become the New Interface for Salesforce Customer 360**
Salesforce is the #1 CRM that enables companies to sell, service, market and
conduct commerce, from anywhere. Slack brings people, data and tools together
so teams can collaborate and get work done, from anywhere. Slack Connect
extends the benefits of Slack to enable communication and collaboration between
a company's employees and all its external partners, from vendors to customers.

Slack will be deeply integrated into every Salesforce Cloud. As the new interface
for Salesforce Customer 360, Slack will transform how people communicate,
collaborate and take action on customer information across Salesforce as well as
information from all of their other business apps and systems to be more
productive, make smarter, faster decisions and create connected customer
experiences.

**Slack To Expand Enterprise Footprint as Part of the World's #1 CRM**
Slack serves leading organizations in every industry around the world, from the
fastest growing startups to Fortune 500 companies, such as Starbucks, Target and
TD Ameritrade, along with leading academic institutions, non-profits, and
governments in more than 150 countries.

As part of the world's #1 CRM, Slack will be able to expand its presence in the
enterprise, not just among Salesforce customers, but for any company undergoing
digital transformation. Upon the close of the transaction, Slack will become an
operating unit of Salesforce and will continue to be led by CEO Stewart
Butterfield.

**Combination to Form the Largest Open Ecosystem of Apps and Workflows
for Business**
Connecting people and data across systems, apps and devices is one of the biggest
challenges companies face in today's all-digital world.

Slack's open platform seamlessly integrates with more than 2,400 apps that
people use to collaborate, communicate and get work done. With the largest
enterprise app ecosystem, the Salesforce platform is the easiest way to build and
deliver apps to connect with customers in a whole new way.

Together, Salesforce and Slack will create the most extensive open ecosystem of
apps and workflows for business and empower millions of developers to build the
next generation of apps, with clicks not code.

**Details on the Proposed Transaction**
The board of directors of each of Salesforce and Slack have approved the
transaction and the Slack board recommends that Slack stockholders approve the
transaction and adopt the merger agreement. The transaction is anticipated to

close in the second quarter of Salesforce's fiscal year 2022, subject to approval by the Slack stockholders, the receipt of required regulatory approvals and other customary closing conditions.

Salesforce has also entered into a voting agreement with certain stockholders of Slack common stock, under which each such stockholder has agreed to vote all of their Slack shares in favor of the transaction at the special meeting of Slack stockholders to be held in connection with the transaction, subject to certain terms and conditions. The Slack shares subject to the agreement represent approximately 55% of the current outstanding voting power of the Slack common stock.

Salesforce expects to fund the cash portion of the transaction consideration with a combination of new debt and cash on Salesforce's balance sheet. Salesforce has obtained a commitment from Citigroup Global Markets Inc., Bank of America, N.A. and JPMorgan Chase Bank, N.A. for a $10.0 billion senior unsecured 364-day bridge loan facility, subject to customary conditions.

**About Salesforce**
Salesforce, the global CRM leader, empowers companies of every size and industry to digitally transform and create a 360° view of their customers. For more information about Salesforce (NYSE: CRM), visit: www.salesforce.com.

Any unreleased services or features referenced in this or other press releases or public statements are not currently available and may not be delivered on time or at all. Customers who purchase Salesforce applications should make their purchase decisions based upon features that are currently available. Salesforce has headquarters in San Francisco, with offices in Europe and Asia, and trades on the New York Stock Exchange under the ticker symbol "CRM." For more information please visit https://www.salesforce.com, or call 1-800-NO-SOFTWARE.

**About Slack**
Slack has transformed business communication. It's the leading channel-based messaging platform, used by millions to align their teams, unify their systems, and drive their businesses forward. Only Slack offers a secure, enterprise-grade environment that can scale with the largest companies in the world. It is a new layer of the business technology stack where people can work together more effectively, connect all their other software tools and services, and find the information they need to do their best work. Slack is where work happens.

Slack and the Slack logo are trademarks of Slack Technologies, Inc. or its subsidiaries in the U.S. and/or other countries. Other names and brands may be claimed as the property of others.

**Advisors**

BofA Securities, Inc. is serving as exclusive financial advisor to Salesforce and Wachtell, Lipton, Rosen & Katz and Morrison & Foerster LLP are serving as legal counsel to Salesforce. Qatalyst Partners LP and Goldman Sachs & Co LLC are serving as financial advisors to Slack. Latham & Watkins LLP and Goodwin Procter LLP are serving as legal counsel to Slack.

### *The Materially Misleading and Incomplete Solicitation Statement*

23.     On December 23, 2020, Defendants caused the Registration Statement to be filed with the SEC in connection with the Proposed Transaction.  The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Forecasts*

24.     The Registration Statement discloses tables for forecasts for Slack (the "Projections").  However, the Registration Statement fails to provide material information concerning these Projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Transaction. These financial forecasts were also relied upon by the Company's financial advisors, Qatalyst and Goldman Sachs, in rendering their fairness opinions.

25.     With respect to Slack's Initial Three-Year Plan, the Registration Statement fails to disclose: (i) the value of certain line items used to calculate (a) Non-GAAP Gross Profit, and (b) Non-GAAP Operating Income (Loss); and (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a).

26.     With respect to Slack's Updated Three-Year Plan and Related Extrapolations, the Registration Statement fails to disclose: (i) the value of certain line items used to calculate (a)

Non-GAAP Gross Profit, (b) Non-GAAP Operating Income (Loss), (c) Unlevered Free Cash Flow, and (d) Unlevered Free Cash Flow Less Stock-Based Compensation; (ii) a reconciliation to its most comparable GAAP measures, in direct violation of Regulation G and, consequently, Section 14(a); and (iii) stock-based compensation.

27. The SEC has indicated that if the most directly comparable GAAP measure is not accessible on a forward-looking basis, the company must disclose that fact, provide any reconciling information that is available without unreasonable effort, identify any unavailable information and disclose the probable significance of that information. A company is permitted to provide the projected non-GAAP measure, omit the quantitative reconciliation and qualitatively explain the types of gains, losses, revenues or expenses that would need to be added to or subtracted from the non-GAAP measure to arrive at the most directly comparable GAAP measure, without attempting to quantify all those items.

28. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific, non-GAAP financial measures (as Slack included in the Registration Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation

Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

30.     The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DI") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

31.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (last visited Aug. 18, 2020) (emphasis added).

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited Mar. 7, 2019); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited Aug. 18, 2020).

[3]     *Non-GAAP Financial Measures*, U.S. SECURITIES AND EXCHANGE COMMISSION (Apr. 4, 2018), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101 (last visited Aug. 18, 2020). To be sure, there are other situations where Regulation G would not apply but are not applicable here.

---

same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

32.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party, such as a financial advisor, has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

33.     Thus, to bring the Registration Statement into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

34.     In addition, the Registration Statement completely fails to disclose prospective financial information for Salesforce. This information is material since Slack's shareholders will own a part of the post-transaction entity.

***Financial Analyses***

35.     With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the underlying inputs used to derive the discount rate of 8.25% to 9.75%; (iii) the terminal values for Slack; (iv) the basis for applying a range of fully diluted enterprise value to next-12-month's estimated UFCF multiples 30.0x to 45.0x; (v) the cash and cash equivalents of Slack as of October 31, 2020; (vi) the number of fully diluted outstanding shares of Slack common stock; (vii) the face value of Slack's outstanding convertible debt as of October 31, 2020; and (viii) the value of Slack's non-controlling interest as of October 31, 2020.

36.     With respect to Goldman Sachs' *Implied Premia and Multiples Analysis*, the Registration Statement fails to disclose:  (i) the total number of fully diluted shares of Slack common stock outstanding; and (ii) Slack's net debt.

37.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow less stock-based compensation; (ii) the underlying inputs used to derive the discount rate of 6.5% to 9.5%; (iii) the terminal values for Slack; (iv) the basis for applying an illustrative range of terminal year multiples of 25.0x to 35.0x to an assumed terminal year NTM unlevered free cash flow and the basis for applying perpetuity growth rates ranging from 2.3% to 6.3% (v) the number of fully diluted outstanding shares of Slack common stock; (vi) the net debt of Slack; and (vii) the net present value of the net operating losses and the basis for using an illustrative discount rate of 8.0%.

38.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: (i) Goldman's basis for applying enterprise value to NTM revenue multiples of 16.0x to 20.0x to NTM revenue estimates for Slack for each of the fiscal years 2022 to 2024; and (ii) the inputs underlying the discount rate of 8.0%.

39.     With respect to Goldman Sachs' *Premia Analysis*, the Registration Statement fails to disclose the premia and transactions observed by Goldman Sachs in the analysis.

40.     With respect to Goldman Sachs' *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Goldman Sachs in the analysis.

41.     In sum, the Registration Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to their most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Registration Statement independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Registration Statement to garner votes in support of the Proposed Transaction from Slack shareholders.

42.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully

1  informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus

2  threatened with irreparable harm, warranting the injunctive relief sought herein.

3
      **FIRST CAUSE OF ACTION**
4  **(Against All Defendants for Violations of Section 14(a) of the Exchange Act
      and 17 C.F.R. § 244.100 Promulgated Thereunder)**
5

6       43.    Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth

7  herein.

8       44.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

9  use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

10  national securities exchange or otherwise, in contravention of such rules and regulations as the

11  Commission may prescribe as necessary or appropriate in the public interest or for the protection

12  of investors, to solicit or to permit the use of his name to solicit any proxy statement or consent or

13  authorization in respect of any security (other than an exempted security) registered pursuant to

14  section 78l of this title." 15 U.S.C. § 78n(a)(1).

15       45.    As set forth above, the Registration Statement omits information required by SEC

16  Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation

17  G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to

18  provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by

19  schedule or other clearly understandable method" of the non-GAAP measure to the "most directly

20  comparable" GAAP measure. 17 C.F.R. § 244.100(a).

21       46.    The failure to reconcile the numerous non-GAAP financial measures included in

22  the Registration Statement violates Regulation G and constitutes a violation of Section 14(a).

23
      **SECOND CAUSE OF ACTION**
24  **(Against All Defendants for Violations of Section 14(a) of the Exchange Act
      and Rule 14a-9 Promulgated Thereunder)**

25       47.    Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth

26  herein.

27       48.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration

28  statements that contain "any statement which, at the time and in the light of the circumstances

---

1  under which it is made, is false or misleading with respect to any material fact, or which omits to

2  state any material fact necessary in order to make the statements therein not false or misleading

3  . . . ."  17 C.F.R. § 240.14a-9.

4       49.   Regulation G similarly prohibits the solicitation of shareholder votes by

5  "mak[ing] public a non-GAAP financial measure that, taken together with the information

6  accompanying that measure . . . contains an untrue statement of a material fact or omits to state a

7  material fact necessary in order to make the presentation of the non-GAAP financial measure . . .

8  not misleading."  17 C.F.R. § 244.100(b).

9       50.   Defendants have issued the Registration Statement with the intention of soliciting

10  shareholder support for the Proposed Transaction. Each of the Defendants reviewed and

11  authorized the dissemination of the Registration Statement, which fails to provide critical

12  information regarding, amongst other things, the financial forecasts for the Company.

13       51.   In so doing, Defendants made untrue statements of fact and/or omitted material

14  facts necessary to make the statements made not misleading.  Each of the Individual Defendants,

15  by virtue of their roles as officers and/or directors, were aware of the omitted information but

16  failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

17  therefore negligent, as they had reasonable grounds to believe material facts existed that were

18  misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

19  disclose such information to shareholders although they could have done so without extraordinary

20  effort.

21       52.   The Individual Defendants knew or were negligent in not knowing that the

22  Registration Statement is materially misleading and omits material facts that are necessary to

23  render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the

24  omitted information identified above in connection with their decision to approve and recommend

25  the Proposed Transaction.

26       53.   The Individual Defendants knew or were negligent in not knowing that the

27  material information identified above has been omitted from the Registration Statement,

28  rendering the sections of the Registration Statement identified above to be materially incomplete

1   and misleading.

2       54.    The Individual Defendants were, at the very least, negligent in preparing and

3   reviewing the Registration Statement. The preparation of a registration statement by corporate

4   insiders containing materially false or misleading statements or omitting a material fact

5   constitutes negligence. The Individual Defendants were negligent in choosing to omit material

6   information from the Registration Statement or failing to notice the material omissions in the

7   Registration Statement upon reviewing it, which they were required to do carefully as the

8   Company's directors. Indeed, the Individual Defendants were intricately involved in the process

9   leading up to the signing of the Merger Agreement and the preparation of the Company's

10  financial forecasts.

11      55.    Slack is also deemed negligent as a result of the Individual Defendants'

12  negligence in preparing and reviewing the Registration Statement.

13      56.    The misrepresentations and omissions in the Registration Statement are material

14  to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations

15  and omissions are not corrected prior to the vote on the Proposed Transaction.

16      57.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

17  equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

18  Defendants' actions threaten to inflict.

19                          **THIRD CAUSE OF ACTION**
                        **(Against the Individual Defendants for**
20              **Violations of Section 20(a) of the Exchange Act)**

21      58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

22  herein.

23      59.    The Individual Defendants acted as controlling persons of Slack within the

24  meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

25  officers and/or directors of Slack, and participation in and/or awareness of the Company's

26  operations and/or intimate knowledge of the incomplete and misleading statements contained in

27  the Registration Statement filed with the SEC, they had the power to influence and control and

28  did influence and control, directly or indirectly, the decision making of the Company, including

1  the content and dissemination of the various statements that Plaintiff contends are materially

2  incomplete and misleading.

3        60.    Each of the Individual Defendants was provided with or had unlimited access to

4  copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

5  prior to and/or shortly after these statements were issued and had the ability to prevent the

6  issuance of the statements or cause the statements to be corrected.

7        61.    In particular, each of the Individual Defendants had direct and supervisory

8  involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

9  had the power to control or influence the particular transactions giving rise to the Exchange Act

10  violations alleged herein, and exercised the same.  The Registration Statement at issue contains

11  the unanimous recommendation of each of the Individual Defendants to approve the Proposed

12  Transaction. They were thus directly involved in preparing the Registration Statement.

13        62.    In addition, as the Registration Statement sets forth at length, and as described

14  herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

15  Merger Agreement. The Registration Statement purports to describe the various issues and

16  information that the Individual Defendants reviewed and considered. The Individual Defendants

17  participated in drafting and/or gave their input on the content of those descriptions.

18        63.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

19  of the Exchange Act.

20        64.    As set forth above, the Individual Defendants had the ability to exercise control

21  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

22  their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

23  these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and

24  proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

25        65.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

26  equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

27  Defendants' actions threaten to inflict.

28

1

## RELIEF REQUESTED

2          **WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

3          A.      Preliminarily and permanently enjoining Defendants and their counsel, agents,

4    employees and all persons acting under, in concert with, or for them, from proceeding with,

5    consummating, or closing the Proposed Transaction, unless and until the Company discloses the

6    material information discussed above which has been omitted from the Registration Statement;

7          B.      In the event that the proposed transaction is consummated, rescinding it and

8    setting it aside, or awarding rescissory damages;

9          C.      Awarding compensatory damages against Defendants, individually and severally,

10   in an amount to be determined at trial, together with pre-judgment and post-judgment interest at

11   the maximum rate allowable by law, arising from the Proposed Transaction;

12         D.      Awarding Plaintiff the costs and disbursements of this action and reasonable

13   allowances for fees and expenses of Plaintiff's counsel and experts; and

14         E.      Granting Plaintiff such other and further relief as the Court may deem just and

15   proper.

16

## DEMAND FOR JURY TRIAL

17         Plaintiff hereby demands a trial by jury.

18

19    DATED: December 28, 2020                    **WOLF HALDENSTEIN ADLER**
                                                  **FREEMAN & HERZ LLP**
20
                                                  By:   */s/ Rachele R. Byrd*
21                                                      RACHELE R. BYRD

22                                                BETSY C. MANIFOLD
                                                  RACHELE R. BYRD
23                                                MARISA C. LIVESAY
                                                  BRITTANY N. DEJONG
24                                                750 B Street, Suite 1820
                                                  San Diego, CA 92101
25                                                Telephone: (619) 239-4599
                                                  Facsimile: (619) 234-4599
26                                                manifold@whafh.com
                                                  byrd@whafh.com
27                                                livesay@whafh.com
                                                  dejong@whafh.com
28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Of Counsel:

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

***Counsel for Plaintiff***

810258